IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS MOCHERE ABUYA | § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-08-CV-2268-G |
| VERIZON SELECT SERVICES, INC. | § § § | |
| Defendant. | § § § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Dennis Mochere Abuya, appearing *pro se*, has filed a motion for new trial under Rule 59 of the Federal Rules of Civil Procedure. For the reasons stated herein, the motion should be denied.

I.

The procedural history of this case is set out in *Abuya v. Verizon Select Services, Inc.*, No. 3-08-CV-2268-G, 2010 WL 2669024 (N.D. Tex. Jun. 4, 2010). Succinctly stated, plaintiff sued his former employer, Verizon Select Services, Inc., for discrimination, retaliation, breach of contract, and defamation. After denying a Rule 12(b)(6) motion to dismiss, *see* Order, 5/27/09, the court issued a scheduling order requiring the parties to serve initial disclosures by July 22, 2009, to complete discovery by March 5, 2010, and to file dispositive motions by April 5, 2010. *See* Init. Sch. Order, 6/25/09 at 1-2, ¶¶ 1, 2 & 6. At defendant's request, the deadlines for completing discovery and filing dispositive motions were extended to May 5, 2010 and June 7, 2010, respectively, as a result of plaintiff's failure to timely serve initial disclosures and answer written

discovery. *See* Order, 2/26/10. On March 15, 2010, defendant filed a motion to compel plaintiff to supplement his interrogatory answers and to produce documents. Because plaintiff refused to confer with opposing counsel or participate in the preparation of a joint status report in connection with that motion, the court scheduled a show cause hearing for March 25, 2010 to determine whether plaintiff should be sanctioned for violating the Standing Order on Non-Dispositive Motions.[1] At the conclusion of the show cause hearing, plaintiff was admonished on the record that he must comply will all court orders, but no sanctions were imposed against him at that time. Thereafter, the parties agreed to the entry of an order on defendant's motion to compel that required plaintiff to produce documents responsive to Request Nos. 15, 16, 19, 29, 35, 41 & 42, and to supplement his answers to Interrogatory Nos. 3, 9, 11, 12, 13, 15 & 16, by April 1, 2010. *See* Order, 3/31/10. When plaintiff failed to meet that deadline, defendant filed a motion for involuntary dismissal or, in the alternative,

---

[1] The Standing Order issued on May 27, 2009, provides, in pertinent part:

> No motion shall be filed unless the party seeking relief first confers by telephone or meets face-to-face with the party or parties affected by the motion. If a party is represented by counsel, the attorney must participate in the pre-motion conference. Otherwise, the unrepresented party must participate in the conference. A conference shall be held within three business days after a request is made, unless otherwise agreed to by the parties . . . Anyone who fails to comply with these guidelines or make themselves available for a pre-motion conference upon request will be subject to sanctions.

*See* Order, 5/27/09 at 2, ¶ 2. With respect to the submission of a joint status report, the order provides:

> A joint status report must be attached to any contested motion. This report must contain the following information: (a) the names of the attorneys or unrepresented parties who participated in the pre-motion conference; (b) the date the conference was held and the amount of time the parties conferred; (c) the matters that were resolved by agreement; (d) the specific matters that need to be heard and determined; and (e) a detailed explanation of why agreement could not be reached as to those matters. Unless otherwise agreed to by the parties, the joint status report must be prepared within three business days of the pre-motion conference. The joint status report must be signed by all attorneys and unrepresented parties who participated in the conference. Anyone who fails to cooperate in the preparation of the joint status report or fails to sign the report will be subject to sanctions.

*Id.* at 2-3, ¶ 3.

for sanctions. Rather than sanction plaintiff, the court gave him one last opportunity to comply with the discovery order. On May 21, 2010, following an informal status conference with plaintiff and defense counsel,[2] the court ordered plaintiff to supplement his interrogatory answers and produce documents by May 25, 2010. In addition, plaintiff was ordered to appear for a deposition at the federal courthouse on May 28, 2010 at 9:00 a.m. Plaintiff was warned that "the failure to comply with this order may result in the imposition of sanctions, including an order striking his pleadings or parts thereof and dismissing this action with prejudice." *See* Order, 5/21/10 at 1-2, *citing* FED. R. CIV. P. 37(b)(2)(A)(iii) & (v).

On May 25, 2010, just hours before his discovery was due, plaintiff advised the court and opposing counsel by email that he was unable to comply with the May 21, 2010 order because his doctor instructed him to "stay away from the stressful environment" that triggered asthma attacks. Noting the absence of any medical evidence that the stress associated with answering interrogatories, producing documents, and appearing for a deposition would be harmful to plaintiff's health, the court denied his request for relief from the May 21, 2010 order. Once again, plaintiff was warned that "the failure to comply with the court's order may result in the imposition of sanctions, including an order striking his pleadings or parts thereof and dismissing this action with prejudice." *See* Order, 5/25/10 at 1, *citing* FED. R. CIV. P. 37(b)(2)(A)(iii) & (v). When plaintiff failed to serve supplemental interrogatory answers and produce documents by May 25, 2010, defendant filed a motion to dismiss. Defendant supplemented its motion when plaintiff failed to appear for a deposition at the federal courthouse on May 28, 2010.

---

[2] Plaintiff requested this conference to discuss outstanding discovery issues. When it became apparent that plaintiff had not fully conferred with opposing counsel prior to the conference, the court focused on the issues raised by defendant in its motion for sanctions.

A show cause hearing on these motions was set for June 4, 2010. Plaintiff was ordered to attend the hearing in person:

> then and there to show cause why he should not be sanctioned for failing to: (1) produce documents responsive to Request Nos. 15, 16, 19, 29, 35, 41 & 42; (2) supplement his answers to Interrogatory Nos. 3, 9, 11, 12, 13, 15 & 16; and (3) appear for a deposition on May 28, 2010.

*See* Order, 5/28/10 at 2. The order further provides that "[i]f plaintiff fails to appear at the show cause hearing, the court may impose additional sanctions, including striking his complaint and dismissing this action with or without prejudice." *Id.*, *citing* FED. R. CIV. P. 16(f)(1). Although plaintiff was duly notified of the show cause hearing, he failed to appear as directed. Nor did he communicate with the court regarding his absence. Instead, on May 28, 2010, plaintiff filed a pleading addressed to Chief Judge Sidney A. Fitzwater entitled "Notice--Motion for New Trial," wherein he alleged, *inter alia*, that the magistrate judge treated him unfairly at the informal discovery conference, that opposing counsel withheld relevant documents during discovery, and that the magistrate judge had a conflict of interest that required his recusal from the case. That motion was denied as premature on June 1, 2010 -- three days before the scheduled show cause hearing. *See* 6/1/10.[3] On June 3, 2010, the day before the show cause hearing, plaintiff sent opposing counsel an email stating:

> While your Law firm and Magistrate Judge Jeff Kaplan have chosen to ignore Plaintiff's repeated complaints some of which have been clearly outlined in the Plaintiff's Motion for New Trial, Plaintiff is now focused on Honorable Chief Judge Sidney A. Fitzwater's response. Plaintiff being Pro Se, Plaintiff has little or no knowledge on what entails in what's left of the current case under Magistrate Judge Jeff Kaplan. The fact that Magistrate Judge Jeff Kaplan by

---

[3] Plaintiff's "Motion for New Trial" was properly considered by this court, rather than Chief Judge Fitzwater, because a chief judge does not have plenary authority to rule on motions in cases assigned to other judges. *See In re McBryde*, 117 F.3d 208, 223, 225-26 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 2340 (1998).

> Magistrate Judge Jeff Kaplan's own admission on May 21, 2010 that Magistrate Judge Jeff Kaplan had not read Plaintiff's complaints that prompted Plaintiff to ask for the Informal meeting, makes Plaintiff very nervous. Plaintiff has completely lost total confidence in Magistrate Judge Jeff Kaplan as a judicial officer who is able to conduct what is left of this case in a fair and impartial manner. Plaintiff strongly feels that Plaintiff's continued participation in what's left of this case under Magistrate Judge Jeff Kaplan would waive or negatively impact Plaintiffs pursuit for Justice by way of a New Trial. *Plaintiff therefore does not intend to appear before Magistrate Judge Jeff Kaplan anymore.* Plaintiff's little knowledge as a Pro Se in this case leaves Plaintiff little or no choice but to rely totally in the infinite wisdom that created Plaintiff and let the universe handle the details.

(Def. Hrg. Exh. 1) (emphasis added).

When plaintiff failed to appear at the show cause hearing, the magistrate judge recommended striking plaintiff's complaint and dismissing this action with prejudice. As noted by the magistrate judge in his recommendation:

> The record in this case documents a clear history of delay and contumacious conduct by plaintiff. Not only did plaintiff violate two discovery orders, he failed to appear at a show cause hearing on June 4, 2010. Plaintiff was warned that his failure to appear at the hearing may result in the imposition of sanctions, including an order striking his pleadings and dismissing this action. Rather than comply with the show cause order, plaintiff boldly proclaimed to opposing counsel that he "does not intend to appear before [the magistrate judge] anymore." Such conduct justifies the imposition of extreme sanctions.

*Abuya*, 2010 WL 2669024 at *3 (internal record citations omitted). Plaintiff was duly served with a copy of the recommendation and notified of his right to file written objections within 14 days, but no objections were filed. The recommendation was adopted by the district judge on June 30, 2010, *see Abuya v. Verizon Select Services, Inc.*, No. 3-08-CV-2268-G, 2010 WL 2669294 (N.D. Tex. Jun. 30, 2010), and a final judgment dismissing the case with prejudice was entered on July 1, 2010. Plaintiff timely filed his motion for new trial on July 28, 2010.

II.

Because there was no trial in this case, the court treats plaintiff's motion as a Rule 59(e) motion for reconsideration. *See United States v. $16,540 in U.S. Currency*, 273 F.3d 1094 (Table), 2001 WL 1085106 at *2 (5th Cir. Aug. 30, 2001). "The district court has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). In deciding plaintiff's motion, the court considers factors such as whether his failure to comply with prior orders was the result of excusable neglect, whether setting aside the judgment would prejudice the defendant, and whether plaintiff has a meritorious claim. *See Drew v. Life Ins. Co. of North America*, No. 3-08-CV-2226-D, 2009 WL 1856604 at *2 (N.D. Tex. Jun. 29, 2009), citing *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). The court need not consider all these factors and may consider others. *Id.*, citing *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). The ultimate inquiry is whether the movant has shown good cause. *Id.*

Nowhere in his motion does plaintiff offer a legitimate explanation for his refusal to comply with two discovery orders or his failure to attend a show cause hearing on June 4, 2010 -- the conduct that resulted in the dismissal of his case. The closest plaintiff comes to offering an explanation is his statement that:

> Considering the harsh, highly intimidating and prejudicial treatment Plaintiff received from Magistrate Judge Kaplan during discovery, Plaintiff informed Verizon Attorney Rachel E. Mascorro on or about June 3, 2010 in an email that Plaintiff would wait to received [sic] response from Honorable Chief Judge Sidney A. Fitzwater on the way forward. Plaintiff felt strongly that Plaintiff's continued participation in what was left of this case under Magistrate Judge Jeff Kaplan would waive or negatively impact Plaintiffs pursuit for Justice by way of a New Trial. Plaintiff also felt that Plaintiff would run into additional humiliating and intimidating treatment similar to that

Plaintiff received behind closed doors during the Informal Conference
in the hands of Magistrate Judge Kaplan.

(Plf. Mot. at 2). As the history of this case shows, the court bent over backwards to give plaintiff an opportunity to comply with its outstanding orders and avoid the imposition of sanctions. Despite his failure to timely serve initial disclosures and answer written discovery, his refusal to confer with opposing counsel or participate in the preparation of a joint status report, and his failure to comply with a discovery order, the court declined to sanction plaintiff. It was not until plaintiff violated a second discovery order and failed to appear at a show cause hearing that the court dismissed his case. Plaintiff was well aware of the consequences of failing to comply with these orders. The court warned plaintiff *three different times* that sanctions -- including an order striking his pleadings and dismissing this action with prejudice -- would be imposed if he failed to comply with the discovery orders and failed to attend the show cause hearing. His response was to ignore each and every order issued by the court and to inform opposing counsel that he "does not intend to appear before Magistrate Judge Jeff Kaplan anymore." Even if plaintiff believed he was treated unfairly at the discovery conference, he cannot unilaterally decide which judges he will or will not appear before. Nor are plaintiff's other complaints grounds for setting aside the judgment of dismissal. Contrary to the unsubstantiated allegations in his motion, counsel for defendant did not engage in any discovery abuse, and the magistrate judge does not have a conflict of interest that requires recusal.[4]

---

[4] The alleged conflict of interest identified by plaintiff is the magistrate judge's attendance at the 2007 annual meeting of the Licensing Executives Society ("LES"), a professional organization of patent licensing executives and attorneys, where the magistrate judge participated in a panel discussion of various aspects of patent litigation. According to plaintiff, Verizon Communications helped fund the LES annual meeting. (*See* Plf. Mot. at 10). However, the exhibits submitted by plaintiff to support this claim show that Verizon sponsored a seminar in July 2007 at the George Mason University Law & Economics Center, entitled "Religious Origins of Western Institutions." (*See id.*, Doc. 76-2 at 22). The magistrate judge has never attended a seminar at George Mason University. Even if Verizon helped fund the LES annual meeting, which the magistrate did attend, it would not be grounds for recusal. *See In re Aguinda*, 241 F.3d 194, 200-06 (2d Cir. 2000).

In sum, plaintiff has failed to demonstrate "excusable neglect" or "good cause" for his failure to comply with lawful court orders. Under these circumstances, there is absolutely no basis for reconsidering the judgment dismissing this case with prejudice.

### **RECOMMENDATION**

Plaintiff's motion for new trial [Doc. #76] should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 30, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE